The Honorable Ricardo S. Martinez

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

IN RE ZULILY, INC. LITIGATION

Case No. C15-cv-01424RSM

PLAINTIFFS' UNOPPOSED MOTION FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (II) CERTIFICATION OF THE SETTLEMENT CLASS

**NOTE FOR MOTION CALENDAR:**
MARCH 6, 2018



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

**Table of Contents**


TABLE OF AUTHORITIES ........ iv

I. INTRODUCTION ........ 1

II. SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ........ 2

A. Plaintiffs' Claims and Allegations ........ 2

B. Procedural History and Counsel's Investigation ........ 3

III. THE PROPOSED TERMS OF SETTLEMENT ........ 3

A. The Settlement Class Definition ........ 3

B. Settlement Consideration ........ 4

1. The Supplemental Disclosures Remedied the Absence of Unlevered Free Cash Flow Projections Necessary to Calculate the Value of QVC ........ 4

2. The Supplemental Disclosures Remedied Shortcomings Regarding Financial Projections Approved by zulily Management ........ 7

a. Correction of the Omission of Stock-Based Compensation ........ 8

b. Correction of the Omission of Net Debt and Diluted Shares Outstanding ........ 9

3. The Supplemental Disclosures Remedied the Absence of Unlevered Free Cash Flow Projections Necessary to Calculate the Value of QVC ........ 10

C. Preliminary Approval ........ 13

D. Notice to the Class ........ 13

E. Attorneys' Fees and Reimbursement of Expenses ........ 14

IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........ 14

A. The Standards for Judicial Approval of a Class Action Settlement ........ 14

B. The Settlement Meets the Ninth Circuit Standard for Approval ........ 16

1. The Strength of the Case and The Risk, Expense, Complexity and Likely Duration of Further Litigation ........ 16




BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

2. The Extent of Discovery Completed and the Stage of the Proceedings ......................19

3. The Proposed Settlement Resulted from Arms' Length Negotiations and Did Not Involve Any Collusion ........................................................................................20

4. The Experience and Views of Counsel ........................................................................21

C. The Settlement Provides For Adequate Notice To The Class ..........................................22

D. Certification of the Class is Appropriate ..........................................................................23

V. CONCLUSION ..........................................................................................................23




BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

# **Table of Authorities**

**Cases**

*Alberto v. GMRI*, No. Civ. 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) 20

*Bellows v. NCO Financial Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ... 20

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979). ... 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ... 14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ... 16

*Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007). ... 21

*Hughes v. Microsoft Corp.*, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ... 22

*In re El Paso Corp. S'holders Litig.*,41 A.3d 432 (Del. Ch. 2012) ... 19

*In re Emerging Commc'ns, Inc. S'holder Litig.*, C.A. No. 16415, 2004 WL 1305745 (Del. Ch. June 4, 2004) ... 7

*In re Equity Funding Corp. of Am Sec. Litig.*, 603 F.2d 1353 (9th Cir. 1979) ... 22

*In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ... 21

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007) ... 7

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ... 14, 16, 21

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995). ... 15, 21

*In re Rambus, Inc. Derivative Litigation*, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ... 21

*In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 Del. Ch. LEXIS 79 (Del. Ch. May 20, 2011) ... 19

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799 (9th Cir. 1986) ... 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). ... 15



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

*Rodriguez v. West Pub. Corp.*, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007)........................... 19

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)). ........................................................................ 22

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993);........................................ 16, 22

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976). ............................................... 15

*Weinberger*, 698 F.2d at 74.......................................................................................... 16

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)...................................................... 15

**Statutes**

15 U.SC. §§ 78n(d)(4),78n(e), 78t(a) ............................................................................ 3

Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 ................................. 3

**Other Authorities**

CFA® Program Curriculum 2015 • Level II • "Volume 4: Equity." CFA Institute, 2014. 22.) .... 5

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................ 1, 13, 15

17 C.F.R. §240.14d-9(d) ................................................................................................ 3

**Treatises**

"Developing an Automated Discounted Cash Flow Model." *The Valuation Handbook: Valuation Techniques from Today's Top Practitioners*. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010 ........................................................................... 5

4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008). ................ 16

*Investment Banking: Valuation, Leveraged Buyouts, and Mergers & Acquisitions*. Ed. Joshua Rosenbaum and Joshua Pearl. Hoboken: John Wiley & Sons, 2013. ..................................... 12



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs in the actions consolidated in the above-captioned matter (the "Consolidated Federal Action"), Patrick Pisano, Karan Jugal, and Scott Mao (collectively, the "Federal Plaintiffs") along with Harry Jackson and Krishna Mada (collectively, the "Delaware Plaintiffs," and together with the Federal Plaintiffs, the "Plaintiffs")[1] by their undersigned counsel, without objection from Defendants[2], respectfully submit this Memorandum in support of the Motion for final approval of the settlement ("Settlement") of the above-captioned class action ("Action")[3], as set forth in the Stipulation and Agreement of Compromise and Settlement entered into by the parties on October 26, 2017 ("Stipulation").[4]

On October 30, 2017, the Court entered an Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Hearing ("Preliminary Approval Order"), which, among other things: (i) preliminarily determined, for purposes of settlement, that notice may be disseminated to the

---

[1] The filed actions were styled: 1) *Patrick Pisano, et al. v. Zulily, Inc., et al.*, Case No. 15-cv-01424 (the "Pisano Action"), 2) *Karan Jugal, et al. v. Zulily, Inc., et al.*, Case No. 15-cv-01447 (the "Jugal Action") and, 3) *Scott Mao, et al. v. Zulily, Inc., et al.*, Case No. 15-cv-01479 (the "Mao Action," and together with the Pisano Action and the Jugal Action, the "Federal Actions"), pending in the United States District Court for the Western District of Washington at Seattle (the "Washington Court"), along with the parties to the actions captioned 4) *Harry Jackson, et al. v. Zulily, Inc., et al.*, Case No. 11440 (the "Jackson Action") and 5) *Krishna Mada, et al. v. Zulily, Inc., et al.*, Case No. 11529 (the "Mada Action," and together with the Jackson Action, the "Delaware Actions")(the Federal Actions and the Delaware Actions are collectively referred to as the "Actions"), pending in the Court of Chancery of the State of Delaware (the "Delaware Court").

[2] Defendants (defined herein) have no opposition to the Motion for Final Approval and the request sought herein; however, Defendants may not agree with the characterization of certain arguments maintained by Plaintiffs herein.

[3] Filed contemporaneously herewith, and incorporated herewith, is Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses.

[4] The Stipulation is attached as Exhibit 1 to the Declaration of Evan J. Smith In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Smith Declaration," with citations thereto as "Smith Decl. __") filed herewith. All capitalized terms, unless otherwise defined herein, shall have the meaning set forth in the Stipulation.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Class (defined below); (ii) approved the parties' proposed form and method for disseminating the Notice of Class Action Proposed Settlement ("Notice") to the Class; and (iii) scheduled a final settlement approval hearing (the "Settlement Hearing") for March 6, 2018, at 9:00a.m.

The parties' settlement agreement is embodied in the Memorandum of Understanding dated September 23, 2015 ("MOU"), and the Stipulation and Agreement of Compromise, Settlement and Release dated October 26, 2017 (the "Stipulation"), which is presented as **Exhibit 1** hereto. The Stipulation is intended by the parties to fully, finally and forever resolve, discharge, and settle the Released Claims, upon terms and subject to the conditions set forth therein. The proposed Settlement was reached after the parties engaged in hard-fought and arm's length settlement negotiations. Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement. If approved, the Settlement will fully resolve the Actions on behalf of a class of persons and entities who held the common stock of zulily, Inc. ("zulily" or the "Company") at any time during the period beginning on and including August 16, 2015, through and including the effective date of the Tender Offer, October 1, 2015 ("Settlement Class").

## II. SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A. Plaintiffs' Claims and Allegations

The complaints filed in each of the Actions are styled as putative class actions by stockholders of zulily in connection with the proposed acquisition, via a tender offer, of all of the outstanding shares of zulily by Liberty Interactive Corporation and certain of its affiliated entities, Ziggy Merger Sub, LLC and Mocha Merger Sub, Inc. (collectively, "Liberty"), which entities were created for the purpose of effectuating the proposed transaction, pursuant to Sections 14(d)(4), 14(e) and 20(a) of the Securities



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Exchange Act of 1934 (the "Exchange Act"), 15 U.SC. §§ 78n(d)(4),78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9").

Plaintiffs allege, *inter alia*, that Defendants violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") to be filed with the United States Securities and Exchange Commission ("SEC") on September 1, 2015. The Recommendation Statement recommended that zulily stockholders tender their shares pursuant to the terms of a tender offer, whereby Liberty sought to acquire all the outstanding shares of common stock of zulily for a combination of cash and stock consideration valued at $18.75 per share. The acquisition was completed on or about October 1, 2015.

**B. Procedural History and Counsel's Investigation**

Plaintiffs incorporate the procedural history and investigation set forth in the Smith Decl.as if set forth at length.

## III. THE PROPOSED TERMS OF SETTLEMENT

**A. The Settlement Class Definition**

The "Settlement Class" means a non-opt out class consisting of all record and beneficial holders of zulily common stock (excluding Defendants and their respective affiliates) at any time during the period from and including August 16, 2015, through and including the effective date of the Tender Offer, October 1, 2015, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate or remote, and any person or entity acting for or on behalf of or claiming under any of them, and each of them.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

**B. Settlement Consideration**

In consideration of the full settlement and release of all Released Claims, zulily agreed to make the additional disclosures to its stockholders as set forth in Amendment No. 5 (attached as **Exhibit A** to the Stipulation), which are fully incorporated herein. These supplemental financial and background disclosures were material to zulily stockholders and valuable to understanding the consideration being offered to zulily stockholders and the overall financial analyses prepared by zulily's financial advisor, and in understanding the work performed by Goldman Sachs in its capacity as the Company's financial advisor.

**1. The Supplemental Disclosures Remedied the Absence of Unlevered Free Cash Flow Projections Necessary to Calculate the Value of QVC**

The Recommendation Statement omitted critical valuation information for QVC, the most important of which was its projected unlevered free cash flows for 2016 through 2020. These omissions were material because approximately one-half of the Merger Consideration paid to zulily's stockholders consisted of QVCA Stock. Accordingly, it was important for zulily stockholders to be made aware of the pertinent information necessary to determine the value of QVCA Stock.[5] Generally speaking, if an acquirer's stock is deemed by the target's stockholders to be overvalued, such acquirer stock will tend to be perceived, cet. par., as less favorable than would otherwise be the case. As such, it was as important for zulily's stockholders to examine and understand the value of the consideration they stood

---

[5] *See* Affidavit of M. Travis Keath in Support of Plaintiff's' Unopposed Motion for (I) Final Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses ("Keath Aff."), ¶10, attached to the Smith Decl. as Exhibit 2.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

to *receive* (i.e., QVCA Stock) as the value of what they were being asked to *sell* (i.e., their shares of zulily). *Id*., ¶11.

Both academicians and practitioners alike acknowledge that the DCF analysis has primacy among corporate valuation techniques. This particular analysis, in fact, forms the basis for all other valuation techniques and is the very core of modern corporate finance.[6,7,8] Because DCF analyses are so fundamentally important in the determination of corporate value, it follows that the propriety of the financial projections necessary to create a DCF analysis is commensurately important. A DCF analysis cannot be performed without projected cash flows. Furthermore, the unique vantage point from which management is able to ascertain the future outlook of the business makes its assessment of the Company's future financial performance, including the projected cash flows that result from such assessment of future financial performance, all but irreplaceable.[9]

---

[6] *See* Keath Aff., ¶13, n. 1 ("Discounted cash flow (DCF) forms the core of finance…. Though professionals may employ other methods of valuation, such as relative valuation and the contingent claims approach, DCF forms the basis for all other valuations. Underscoring the importance of DCF valuation is the fact that it provides a linchpin to link various fields of finance.")

"Developing an Automated Discounted Cash Flow Model." *The Valuation Handbook: Valuation Techniques from Today's Top Practitioners*. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010. 110.

[7] *See* Keath Aff., ¶13, n. 2 ("While discounted cash flow valuation is only one of the three ways of approaching valuation and most valuations done in the real world are relative valuations, it is the foundation on which all other valuation approaches are built. To do relative valuation correctly, we need to understand the fundamentals of discounted cash flow valuation. This is why so much of this book focuses on discount cash flow valuation." Damodaran, Aswath. "Approaches to Valuation." *Investment Valuation*. 2nd ed. 11.)

[8] *See* Keath Aff., ¶13, n. 3 ("In finance theory, present value models [also referred to as discounted cash flow models] are considered the fundamental approach to equity valuation." CFA® Program Curriculum 2015 • Level II • "Volume 4: Equity." CFA Institute, 2014. 22.)

[9] Keath Aff., ¶¶13-14.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Based on this, the disclosure of projected cash flows is a staple in the vast majority of proxy statements filed by publicly traded companies being acquired in corporate mergers. Here, however, zulily failed to provide its stockholders with either the component figures needed to calculate the unlevered free cash flows of QVC, nor the cash flow figures themselves.[10] In fact, it is common for fairness opinions to include valuation analyses of the acquiring company when that company's shares constitute a component of the consideration being offered to the target company. Goldman had neglected to do so in this instance, making it all the more important that zulily's stockholders be provided the information necessary to perform such analyses themselves. Goldman's fairness opinion did not include a DCF analysis of QVC.[11] In fact, Goldman had not prepared a valuation analysis of any kind with respect to QVC. The Recommendation Statement left zulily's stockholders with neither (i) any analytical evidence of QVC's value from the Company's financial advisor, nor (ii) the information that would enable them to draw their own conclusions.[12] According to Plaintiffs' retained financial expert, the Supplemental Disclosures remedied this significant problem by disclosing the projected unlevered free cash flows for QVC, thus materially improving the mix of information available to zulily's stockholders with respect to the valuation of QVC.[13] Mr. Keath states in his Affidavit,

---

[10] *Id.*, ¶15.

[11] Although Goldman prepared a *Pro Forma Combined Company Discounted Cash Flow Analysis*, this did not provide evidence of QVC's standalone value. Instead, it estimated the value of the combination of zulily and QVC on a pro forma basis, thereby entangling QVC's value with that of zulily and the synergies expected to result from the Merger. It did not address the value of the QVCA Stock that formed approximately one-half of the Merger Consideration to be paid to zulily's stockholders. See Keath Aff., ¶16, n. 4.

[12] *Id.*, ¶16.

[13] *Id.*, ¶17.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

"Because it enabled zulily's stockholders to independently assess the value of QVC using the single-most meaningful valuation method - the DCF analysis - it is my opinion that the projected unlevered free cash flows are of such singular importance that this disclosure alone constituted a material improvement in the total mix of information available to zulily's stockholders."[14]

**2. The Supplemental Disclosures Remedied Shortcomings Regarding Financial Projections Approved by zulily Management**

The Supplemental Disclosures remedied several material shortcomings from the Recommendation Statement with respect to omissions from senior management's financial projections for 2016 through 2020; specifically, stock-based compensation and net debt. These forecasts provided stockholders with additional insight into zulily's forecasted future financial performance, thus providing meaningful information regarding the valuation of the stock they were asked to exchange.[15]

**a. Correction of the Omission of Stock-Based Compensation**

Stock-based compensation expense results from rewarding employees and directors with common shares, options, or other securities that result in dilution to existing stockholders. Here, zulily's management and Goldman deducted stock based compensation from cash flow as if it had been paid in

---

[14] *Id.*

[15] *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007)(finding that stockholders "obviously find it important to know what management and the company's financial advisor's best estimate of… future cash flows would be" and "projections of this sort are probably among the most highly-prized disclosures by investors"); *see also In re Emerging Commc'ns, Inc. S'holder Litig.*, C.A. No. 16415, 2004 WL 1305745, at *37 (Del. Ch. June 4, 2004) (projections are "highly material" because knowledge of the projections "would have enabled the [unit holders] to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company"); *In re PNB Holding Co. S'holders Litig.*, No. 28-N, 2006 WL 2403999, at *15 (Del. Ch. Aug. 18, 2006)("reliable management projections of the company's future prospects are of obvious materiality to the electorate.").



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

cash.[16] Goldman deducted stock-based compensation expense from unlevered free cash flow as an alternative means of estimating the dilutive effect, rather than making the dilution adjustment to the share count. The critical issue is that zulily stockholders needed to be made aware of the treatment in order to understand how to interpret the unlevered free cash flow information presented, as well as the results derived under the discounted cash flow valuation method.[17]

The Recommendation Statement noted that stock-based compensation had been deducted in the calculation of unlevered free cash flow; however, the stock-based compensation figures were not included in the Recommendation Statement. This was remedied in the Supplemental Disclosures. Figure 1 below presents the stock-based compensation figures and indicates their materiality relative to zulily's unlevered free cash flows. Specifically, the projected tax-effected stock-based compensation expenses during the forecast period ranged from 8.3% to 18.9% of zulily's unlevered free cash flows. In other words, the Company's unlevered free cash flows would have been 8.3% to 18.9% higher without the deduction of stock-based compensation which, in turn, would increase the overall DCF valuation. Thus, this is material by any standard. [18]

---

[16] Keath Aff., ¶25.

[17] Keath Aff., ¶26.

[18] Keath Aff., ¶¶27-28.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

**Figure 1: Impact of Stock-Based Compensation On zulily's Unlevered Free Cash Flows**

| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| Unlevered Free Cash Flow | $ 78.0 | $ 99.0 | $ 164.0 | $ 163.0 | $ 216.0 | $ 250.0 |
| Stock-Based Compensation Expense | $ 13.0 | $ 28.0 | $ 31.0 | $ 32.0 | $ 32.0 | $ 31.0 |
| Less: Taxes | $ (3.9) | $ (9.2) | $ (10.2) | $ (10.6) | $ (10.6) | $ (10.2) |
| Tax-Effected Stock-Based Compensation Expense | $ 9.1 | $ 18.8 | $ 20.8 | $ 21.4 | $ 21.4 | $ 20.8 |
| *% of Unlevered Free Cash Flow* | *11.6%* | *18.9%* | *12.7%* | *13.2%* | *9.9%* | *8.3%* |

*Sources: ZU 000098, Supplemental Disclosures. Subject to rounding.*

### b. Correction of the Omission of Net Debt and Diluted Shares Outstanding

Significantly, the Recommendation Statement clearly indicated that Goldman's Illustrative Present Value of Future Share Price Analysis ***required management's financial projections*** with respect to, among other things, "the applicable end of year net debt balance from the Management Forecasts," and "diluted share count based on… the Management Forecasts…."[19] Nevertheless, this information was not included in the limited projected financial information provided in the initial Recommendation Statement. By omitting projected figures for net debt and diluted shares outstanding, the Recommendation Statement rendered zulily's stockholders unable to (i) assess the propriety of Goldman's Illustrative Present Value of Future Share Price Analysis, or (ii) independently prepare such an analysis for themselves.[20]

Specifically, like the DCF analysis, and as implied by the name, Goldman's Illustrative Present Value of Future Share Price Analysis was a present-value based analysis. As a present-value based analysis, it therefore was an important means of assessing zulily's value.[21] This information was

[19] Recommendation Statement at 33.

[20] Keath Aff., ¶¶30-31.

[21] *Id.*, ¶32. *See also* ¶¶13-14.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

particularly material here; producing value indications of up to $29.42, Goldman's Illustrative Present Value of Future Share Price Analysis yielded results at the high end, considerably above both (i) the results of its *Illustrative Discounted Cash Flow Analysis* and (ii) the $18.75 indicated value of the Merger Consideration actually paid to zulily's stockholders.[22]

The inclusion of the projected figures for net debt and diluted shares outstanding in the Supplemental Disclosures remedied their absence from the Recommendation Statement, thus enabling zulily's stockholders to critically examine Goldman's Illustrative Present Value of Future Share Price Analysis and/or independently prepare their own calculations with respect to this present-value based analysis.[23]

In summary, Plaintiffs believe this new information allowed stockholders to better evaluate the various methods of analyses conducted by Goldman Sachs in the Recommendation Statement which relied on this newly presented data, especially since the data provided more detail about predicted expenses. In Plaintiffs' view, it was critical to have access to the underlying projections in order to form judgments about the soundness of the analysis.

### 3. The Supplemental Disclosures Also Remedied Shortcomings Related to Key Inputs to GoldmanSach's DCF

Market-based approaches to valuation (such as examining pricing multiples from observations of public companies and precedent transactions) are based on the principle of comparison. A company may appear to be priced cheaply if its multiples are at or near the low end of the range exhibited by its peers, or priced richly if at or near the upper end of the peer range. The original Recommendation

---

[22] *Id.*, ¶33.

[23] *Id.*, ¶34.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Statement presented median data regarding selected companies' values over the course of 2015-2018, while the supplemental disclosures included a range of valuation multiples over that timeframe which provided a more complete portrait of the value of the companies than the mean alone could. As a result, Plaintiffs believe the zulily stockholders were able to more fully understand whether or not the selected companies were in fact comparable for the purposes of valuing the Company.

In this Action, however, the market-based approaches are also important for insights offered into Goldman's DCF analysis of zulily. The supplemental disclosure of the implied terminal EBITDA multiples from Goldman's DCF analysis of zulily, when compared to the supplemental disclosure of the ranges of pricing multiples observed among the Company's publicly traded peers and comparable precedent transactions, indicate that Goldman may have been unduly pessimistic in its selected range of assumed growth rates in the DCF analysis used to estimate zulily's range of terminal values. This, in turn, would serve to produce correspondingly lower indications for the value of zulily's stock.[24]

The information in the Supplemental Disclosures allowed stockholders to cross-check the implied terminal EBITDA multiples with observed EBITDA multiples for the Company's publicly traded and/or precedent transaction peers to determine whether the selected perpetuity growth rate range is appropriate, or should be revisited.[25] Because zulily's implied terminal EBITDA multiples

---

[24] Keath Aff., ¶¶19-20.

[25] "The PGM [Perpetuity Growth Method] is often used in conjunction with the EMM [Exit Multiple Method], with each serving as a sanity check on the other… if the implied exit multiple from the PGM is not in line with normalized trading multiples for the target or its peers, the perpetuity growth rate should be revisited."

"Discounted Cash Analysis." *Investment Banking: Valuation, Leveraged Buyouts, and Mergers & Acquisitions*. Ed. Joshua Rosenbaum and Joshua Pearl. Hoboken: John Wiley & Sons, 2013. 150. Print.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

were so comparatively low in this instance, the information facilitating such comparisons (which was missing from the Original Disclosures) was correspondingly important. Figure 2 below illustrates the pessimistic character of the terminal value assumptions underlying Goldman's DCF analysis.[26]

**Figure 2: zulily, Inc.**
**Comparison of Selected EBITDA Multiples from Goldman's Fairness Opinion**




*Source: Supplemental Disclosures, Merger Proxy, pp. 33,34*

In this instance, revisiting Goldman's selected range of growth rates appears to have been warranted. The implied range of terminal EBITDA multiples of 6.0x to 8.4x seem unduly pessimistic when compared to the ranges of (i) 9.1x to 29.9x observed among the Diversified Large-Cap eCommerce companies from Goldman's *Selected Companies Analysis*, (ii) 5.2x to 58.5x observed among the Other eCommerce companies from Goldman's *Selected Companies Analysis*, and (iii) 8.2x to 83.4x observed in Goldman's *Selected Precedent Transactions Analysis*. A zulily stockholder could

---

[26] Keath Aff., ¶21.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

therefore have reasonably concluded that Goldman should have selected higher growth rates to produce implied EBITDA multiples more in line with market observations. This, in turn, would have produced higher terminal values and thus higher per-share value indications than those calculated by Goldman. Therefore, the omission of (i) zulily's implied terminal EBITDA multiples, (ii) the range of EBITDA multiples from Goldman's *Selected Companies Analysis*, and (iii) the range of EBITDA multiples from Goldman's *Selected Precedent Transactions Analysis*, were among the material shortcomings in the Recommendation Statement that were remedied by the Supplemental Disclosures.[27]

**C. Preliminary Approval**

Plaintiffs moved for preliminary approval of the Settlement Agreement on October 26, 2017, Dkt. #12, and the Court entered the Preliminary Approval Order on October 30, 2017, Dkt. #13. Smith Decl., ¶¶27, 45. In the Preliminary Approval Order, the Court provisionally certified a mandatory non-opt-out class as defined above pursuant to Rules 23(a) and 23(b)(1) and (2). *Id.* at ¶45. The Court further preliminarily certified the Federal Plaintiffs as the Class representatives for the Settlement Class, and preliminarily appointed Plaintiffs' Counsel as Class Counsel for the Class.

**D. Notice to the Class**

In the Preliminary Approval Order, the Court approved the form of the proposed Notice of Class Action Proposed Settlement, Motion for Attorneys' Fees and Expenses and Final Approval Hearing (the "Notice") and set deadlines for the mailing of the Notice. *Id.* By November 20, 2017 (21 calendar days after entry of the Preliminary Approval Order), Defendants are required to cause the Notice to be mailed by United States mail, postage prepaid, to all members of the Class as of the date of the

---

[27] Keath Aff., ¶¶22-23.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

consummation of the merger at their last known address appearing in the stock transfer records maintained by or on behalf of the Company. Preliminary Approval Order at 3-4. Further, at least ten (10) days prior to the Settlement Hearing, Defendants must file an affidavit evidencing the dissemination of the Notice to the Class. As of this date, the Notice has not yet been disseminated to the Class. *Id*. To the extent necessary, Plaintiffs will comment on the results of the Notice in any Reply papers filed in support of the final approval of the Settlement.

### E. Attorneys' Fees and Reimbursement of Expenses

Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees and expenses in an amount not to exceed $356,250.00, which amount has been agreed to by Defendants, subject to Court approval. *See* Stipulation, at Section 10. Incorporated herewith and filed contemporaneously is Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. The Standards for Judicial Approval of a Class Action Settlement

Courts consistently favor the settlement of disputed claims, *see MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986), particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Indeed, class action suits readily lend themselves to compromise because of



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.[28] It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."

Now that the Court has preliminarily approved the settlement and caused notice to issue to Settlement Class members consistent with Federal Rule of Civil Procedure 23(e)(1), the Court must decide whether final approval is warranted.[29] Ultimately, the Court should finally approve the settlement if it determines that the settlement is "fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit has articulated eight factors for courts to consider in this analysis, which are:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. When examined under the applicable criteria, the factors support final judicial approval of the Settlement.

---

[28] *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The law always favors the compromise of disputed claims, including those asserted in stockholder class actions. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

[29] In *Wojno v. FirstMerit Corporation*, 5:16-cv-00461-BYP (N.D. Ohio, Feb. 2, 2017), the Court approved a disclosure-only, non-opt-out class action settlement as fair, reasonable and adequate. A copy of the Order and Final Judgment is attached to the Smith Decl. as Exhibit 12.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

In exercising its "sound discretion" in reviewing a settlement,[30] district courts should not adjudicate the merits of the case. *Omnivision*, 559 F. Supp. 2d at 1041 (citing *Officers for Justice*, 688 F.2d at 625). As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625; *see also Weinberger*, 698 F.2d at 74 ("in order to avoid a trial, the judge must [not] in effect conduct one").

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this Action is fully warranted because the Settlement is the product of arm's-length negotiations by experienced counsel on both sides. It is the considered judgment of Plaintiffs' Counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval. *See* Smith Decl. ¶¶ 42, 44.

### B. The Settlement Meets the Ninth Circuit Standard for Approval

#### 1. The Strength of the Case and The Risk, Expense, Complexity and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008). Moreover, Federal Rule of Civil Procedure

---

[30] *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi, Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

23(c)(1) provides that class certification orders may be altered or amended any time before a decision on the merits. Thus, in any class action suit, there is always a risk that a class will be modified or decertified prior to a decision on the merits. As such, the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin*., 213 F.3d at 459.

Plaintiffs believe that the settlement terms compare favorably to the risks associated with continued litigation. Counsel conducted an extensive investigation and analysis of the claims. Their efforts included: (1) a factual investigation into the events and circumstances underlying the claims in the Complaint, including reviewing and analyzing all relevant publicly available media, analyst reports, and SEC filings; (2) the drafting of a detailed Complaint; (3) review of confidential, non-public documents produced by Defendants; (4) conducting the depositions of an independent board member of zulily as well as a representative of its financial advisor, Goldman Sachs, to confirm the fairness and adequacy of the Settlement; and (5) retaining a financial expert to assist in the analysis of the claims and supplemental disclosures. As a result, Plaintiffs' Counsel gained a comprehensive understanding of the strengths and weaknesses of the case. *See* Smith Decl. ¶¶ 23-25, 40.

The risks faced by Plaintiffs in establishing liability demonstrate that the Settlement provided the Class with a significant benefit that was not only fair, reasonable, and adequate, but achieved a favorable result that included the disclosure of virtually all of the material sought in the Action. While Plaintiffs' counsel believe that the claims asserted had merit, the complexities and uncertainties of this litigation warrant approval of the Settlement.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

In addition to the disclosure claims, Plaintiffs alleged, among other things, that the Merger was the product of a flawed process designed to ensure the sale of zulily on terms preferential to QVC, but detrimental to Plaintiffs and the Class. Plaintiffs asserted that the Merger Agreement contained improper deal protection provisions that locked up the Merger in favor of QVC, including: (i) a "no solicitation" provision that constrained the Individual Defendants' ability to communicate and negotiate with potential buyers who wished to submit or had submitted unsolicited alternative proposals; (ii) a "matching rights" provision that required the Company to provide QVC with the opportunity to match any superior proposals; (iii) Tender and Support Agreements that virtually locked up the Proposed Transaction; and (iv) a termination fee of $79,000,000. Smith Decl., ¶43.

Plaintiffs believe that these claims were meritorious when filed, but there remained substantial risks against establishing liability at trial or in the face of any potential summary judgment motion. To establish their claims, Plaintiffs would have argued that: (i) at all relevant times, the Individual Defendants owed fiduciary duties to zulily's stockholders; and (ii) the Individual Defendants breached those duties by engaging in a flawed process.

Defendants could and likely would have sought to demonstrate, among other things, that the Company retained independent legal and financial advisors, and at the end of the process, Goldman Sachs rendered a fairness opinion regarding the Merger consideration before the Board approved the Merger. It is likely that Defendants would have further argued that the deal protection devices were reasonable under the circumstances; and that no stockholder was damaged by the Individual Defendants' conduct. Moreover, in proving damages, the parties would have engaged in an inevitable battle of the experts in determining the market value for zulily, based on the factors discussed above.



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Courts have held that, in a change of control transaction, a board need only conduct a reasonable sales process, not a perfect one. *See, e.g., In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 Del. Ch. LEXIS 79, at *62 (Del. Ch. May 20, 2011).[31] Further, no rival bidder emerged at the time of the Settlement, making the prospect of securing an injunction (on grounds other than disclosures) dim. *See, e.g., In re El Paso Corp. S'holders Litig.*, 41 A.3d 432, 449-52 (Del. Ch. 2012).

In recognition of these factors, Plaintiffs' counsel secured the Supplemental Disclosures, which remedied the various misleading statements and omissions identified by Plaintiffs. Plaintiffs' counsel's efforts resulted in a significant measure of protection and benefit to the Class. Based upon their investigation, discovery efforts, and analysis of applicable legal principles, Plaintiffs and their counsel concluded that the Supplemental Disclosures provide ample consideration for the Settlement and release of the claims in this lawsuit, given the substantial risks, costs, and uncertainties of continued litigation. This Settlement is based upon adequate information and a sufficient investigation of the asserted claims.[32]

**2. The Extent of Discovery Completed and the Stage of the Proceedings**

The parties reached the proposed Settlement after substantial negotiations. Plaintiffs conducted discovery, including document production and the depositions of key witnesses, including a member of the zulily board of directors and a representative of Goldman Sachs, the Company's financial advisor.

---

[31] In any event, Plaintiffs' valuation expert determined that he would have had difficulty demonstrating that the Merger consideration fell outside the range of fairness. Keath Aff., ¶ 9.

[32] *See Rodriguez v. West Pub. Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (investigation sufficient to enable counsel and the court to act intelligently supports approval).



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Thus, Plaintiffs' Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct and were able to act intelligently in negotiating the proposed Settlement.

**3. The Proposed Settlement Resulted from Arms' Length Negotiations and Did Not Involve Any Collusion**

The Settlement is the result of informed, arm's length and hard-fought negotiations between Plaintiffs' Counsel and Defendants' counsel. There can be no claim of collusion here. Moreover, counsel for each party is experienced and thoroughly familiar with the factual and legal issues. Courts recognize that the opinion of experienced and informed counsel supporting a settlement is entitled to considerable weight. *See Bellows v. NCO Financial Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (finding that "it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight"); *see also Alberto v. GMRI*, No. Civ. 07-1895 WBS DAD, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008) (stating that "when approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits").

Here, the Action alleges that the Recommendation Statement contained false and misleading statements. In consideration for (a) the settlement and dismissal with prejudice of the Action, and (b) the release of all Released Claims, the Parties agreed to the additional disclosures set forth in Amendment No. 5, which are fully incorporated herein. This includes disclosures regarding financial forecasts, disclosures regarding free cash flows, disclosures to enable zulily stockholders to conduct



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

their own DCF analysis and inputs for the comparable company and precedent transaction analyses.[33] Plaintiffs contend that the Supplemental Disclosures were material and important for stockholders in order for them to make an informed decision as to whether or not to tender their shares.[34] Moreover, without admitting any wrongdoing, Defendants acknowledge that the then pendency and prosecution of the Consolidated Federal Action and the Delaware Actions and the negotiations between the Parties' counsel resulted in Defendants' agreement to enter into the Settlement.[35]

### 4. The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."[36] This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *In re Heritage Bond Litigation*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (internal citation omitted).

This Action has been litigated by experienced and competent counsel on both sides. Defendants were represented by Weil, Gotshal & Manges LLP and Davis Wright Tremaine LLP, firms with an

---

[33] *See* Section B, *supra*.

[34] *See* Keath Aff., Smith Decl., Ex. 2.

[35] *See* Stipulation of Settlement

[36] *Heritage Bond*, 2005 WL 1594403, at *9 (citations omitted); *In re Rambus, Inc. Derivative Litigation*, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009), at *3; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007).



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

abundance of experience in this type of litigation. Plaintiffs' Counsel has many years of experience in litigating securities fraud actions throughout the country, and in assessing the relevant merits of each side's case.

For the reasons summarized above, Plaintiffs' Counsel believe, based on their experience, knowledge of the strengths and weaknesses of the case, and all other factors considered in evaluating proposed class action settlements, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class. Accordingly, Plaintiffs respectfully submit that this Court should grant final approval of the Settlement.

**C. The Settlement Provides For Adequate Notice To The Class**

In accordance with the Court's Preliminary Approval Order, zulily was directed to mail copies of the Notice to all members of the Class at their last known address appearing in records maintained by or on behalf of zulily. The notice program is required to commence no later than November 20, 2017. The Notice will advise Class Members of the essential terms of the Settlement, will set forth the procedure for objecting to the Settlement, and provide specifics on the date, time and place of the final approval hearing. The Notice also contains information regarding counsel's fee application. Thus, the Notice to be provided contains all necessary information for Class Members to make an informed decision regarding the proposed Settlement and will fairly apprise Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and will



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

comply with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, and due process.[37]

### D. Certification of the Class is Appropriate

To proceed with the settlement approval process, it is necessary for the Court to certify a class for Settlement. The Court provisionally certified the class in the Preliminary Approval Order. Nothing has changed in the interim with respect to the class that would alter that conclusion. As such, Plaintiffs incorporate the argument in the preliminary approval papers in support of class certification.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement.

DATED: November 14, 2017.

**BRESKIN JOHNSON & TOWNSEND PLLC**

s/ Roger M. Townsend
Roger M. Townsend, WSBA #25525
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
*Counsel for Plaintiffs Karan Jugal, Patrick Pisano and Scott Mao*

---

[37] *See Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *1 (W.D. Wash. Mar. 26, 2001) (approving similar notice regimen) (citing *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). *See e.g.*, *In re Cement and Concrete Antitrust Litig*., 817 F.2d 1435, 1440 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989) (stating that "notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (internal citation omitted); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *In re Equity Funding Corp. of Am Sec. Litig*., 603 F.2d 1353, 1361 (9th Cir. 1979) (directing that class notice must "present a fair recital of the subject matter and proposed terms" and provide "an opportunity to be heard to all class members") (internal citation omitted).

**FARUQI & FARUQI LLP**

s/ Nadeem Faruqi
Nadeem Faruqi
685 3rd Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330

**MONTEVERDE & ASSOCIATES PC**

s/ Juan Monteverde
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341

*Counsel for Plaintiff Karan Jugal*

**POMERANTZ LLP**

s/ Gustavo Bruckner
Gustavo F. Bruckner
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100

*Counsel for Plaintiff Scott Mao*

**BRODSKY & SMITH**

s/ Evan Smith
Evan J. Smith
s/ Marc Ackerman
Marc L. Ackerman
2 Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200

*Counsel for Plaintiff Patrick Pisano*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Jamie Telegin
Jamie Telegin, Legal Assistant



BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660